Wright, J.,
delivered the opinion of the Court.
This is a contest upon an issue of devisavit vel non, as to the validity of the Will of Jonathan Rose, who died in November, 1856, in Carroll County. The question is, whether it is so executed as to pass real estate under the Act of 1784, ch. 22, Sec. 11. The testator had no children, and devised his estate to his surviving wife, and the will is contested by his collateral kindred.
It was attested by two subscribing witnesses, A. Barks-dale and David Evans, the latter being an illegitimate half brother of the testator. Barksdale proved that he wrote the -will about sun-up, in pursuance of the directions given him by the testator at the time, being sent for to do so about day-light. Milton Rose, (who appears to be one of the contestants,) being the messenger: that he found the testator very ill, lying in a bed in the north-west corner of the house, on his right side, with his face toward the fire-place, which was in the west end of the house, and near the bed; that he, (the witness,) sat by the side of the- bed, while he wrote the Will; that after he had finished writing the will, he read it to the testator, and asked him if it was right: he said it was ; witness then told testator he must sign it, thereupon the testator, with the assistance of some member of the family, rose up ; witness handed him the Will, but being an illiterate man witness wrote his name to the Will, and *25 put it in bis hand, and gave him the pen, and held his hand while he made his mark; he told him he must have it witnessed; testator said, you can witness it; witness said you must have two witnesses ; the testator then said you and brother Dave can witness it, alluding, as witness supposed, to David Evans, who was then standing on the hearth, he then witnessed the paper, and wrote the name of David Evans, as one of the attesting witnesses, and he, (Evans,) made his mark, all of which was done immediately after the signing of the will, and in presence of the testator. The witness had learned from Milton Rose, (on the way,) what writing was to be done, that it was a Will for Jonathan Rose, and when he first went into the house before the Will was written, he held out his hand to the testator, who also hold out his, and they shook hands, and he said to the testator, I have come to do that writing, but I must warm first; to which testator said, “ well, ” and after witness had warmed a little, he wrote the Will, and it was executed as above stated.
The same facts, so far as material to this contest, are fully proved by a gentleman of standing and intelligence, Dr. S. W. Allen, the family physician, who sat near Barksdale, and held the inkstand while he wrote the Will, and who was present at its execution. He establishes that the testator dictated the provisions of the Will, and that it was written in accordance with his instructions, that he selected the executor named in the Will, over another whom his wife wished appointed, that it was read to him by Barksdale, and he approved it, and signed it, by making his mark, and that immediately after the signing of the Will, it was attested at the request, and in the presence of the testator, by Barksdale and Evans, who *26 did so in the presence of each other, that the conversation of the testator in relation to the Will, at the time of its execution, was entirely rational.
Evans, the other attesting witness, whose testimony is open to remark, his feelings, to say the least, being with the contestants, on whose behalf he was examined, after agreeing with Barksdale as to the posture of testator in the bed, near the fire-place, states that he ivas present at the time the Will ivas signed; that Barksdale turned to him, and requested him to sign his name as a witness to the Will; that he told him he could not write, but that if he would write his name, he would make his mark; that he was cold and scared, and could not write — that he could write, but sometimes made his mark; that Barksdale did write his name to the Will as an attesting witness, and he made his mark ; that this was done standing upon the hearth, near the fire, some two or three feet from 'the side of the bed where the testator lay, that Dr. Allen was present; that when witness came into the house that morning, he found Barksdale sitting by the bed-side writing the Will, with some two or three lines to write, and when he had finished, he got up and turned round facing the testator, and held up the paper and asked him if he acknowledged that paper to be his Will; that witness could not understand the answer; that Barksdale then asked the testator if he was in the same mind that he was before, and that testator made motions with his head, which witness took to be yes ; witness thought he was low, and could not understand him when he spoke; that he remained in the room at the hearth, by the fire, from the time he went into the house until the Will was exe *27 cuted, and did not bear Barksdale read the Will to the testator, nór see the testator sign it, nor hear the testator say he had signed it, and request witness to attest it; that he did not see Barksdale sign the Will as a witness, or know who wrote the testators’ name to it, or made the mark attached to his name; nor did he hear testator ’give any instructions as to the Will.
It is not insisted here, and could not be upon evidence, that there is any lack of testamentary capacity, or that this Will is affected by fraud -or imposition ; neither can there be any doubt, whether it were heard by Evans or not, that the testator did request both Barksdale and Evans to become attesting witnesses to it. The testimony of Barksdale and Allen shows a complete execution of this Will, including its attestation by the requisite number of witnesses, and the subsequent treachery or failure of memory of the witness, (Evans,) does not destroy or invalidate it. It is difficult to believe that he did not hear it read to the testator, and hear him approve it, and he must have seen Barksdale sign his name, and the testator make his mark, and must also, in some way, satisfactory to himself, have ascertained that the testator desired him to become a witness to it.
The argument in the Circuit Court — and the same argument is made here — that in order to pass real estate the witness must not only see the testator sign the Will, or hear him acknowledge it, and be requested by him to witness it, but that the facts that the Will was so signed, or acknowledged and attested, must be made to appear by the testimony of the attesting witnesses.
The Circuit Judge refused so to instruct the jury, and *28 upon this subject charged them that the Will must be attested by two subscribing witnesses, in the presence of the testator and at his request; that it was sufficient if the Will was, in fact, read to him, and he knew its contents, and did sign it, and request them to witness it, and they did so in his presence, and that these facts could be proven by persons other than the subscribing witnesses.
This instruction is not erroneous. It is well settled, that if the attesting witness denies his attestation, or will not swear that he saw the testator execute and publish his will, or alleges the incapacity of the testator, his handwriting may be proved, and his testimony controverted. Even if the subscribing witnesses all swear that the Will was not duly executed, the devisee may, notwithstanding, go into other evidence to prove its due execution. In all cases, however, where the witnesses clash in their statements, or deny their attestations, the evidence in favor of the Will must be clear and full to substantiate it.
By putting his name to the instrument, Evans, in effect, certified to his knowledge of the mental capacity of the testator, and to the due execution of the Will, and in swearing, as he has done, against his own act and conduct at the time, he has shaken his own credibility. The circumstances attending the execution of this Will, the conduct of all the parties, the whole res-gestce, demonstrate that the requisitions of the Statute have been observed: Modern Probate of Wills, 458, 459, 490, 491, 492.
The judgment of the Circuit Court, upon the verdict of the jury, establishing the Will, must be affirmed.